Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Bankruptcy Appeal |
| | ) | |
| CELSIUS NETWORK LLC, | ) | Case No. 1:23-cv-00523-JPO |
| | ) | |
| Debtor-Appellee. | ) | |

## DEBTORS' RESPONSE IN OPPOSITION TO APPELLANTS' MOTON FOR LEAVE TO APPEAL

Pursuant to rule 8004(b)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the above-captioned appellees/debtors and debtors in possession (collectively, the "Debtors")[1] file this response (this "Response") to the *Motion to Authorize Certain Procedural Relief, And, If Needed, for Leave to*

[1] The Debtors in the jointly administered chapter 11 cases of *In re Celsius Network LLC, et al.*, No. 22-10964 (MG), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

*Appeal* (the "Motion") filed with the *Notice of Appeal and Statement of Election* [Docket No. 1894] (the "Notice of Appeal") by Daniel A. Frishberg, Georges Georgiou, Immanuel J. Herrmann, Kulpreet Khanuja, Christopher J. Little, and Luke P. Nowak (collectively, the "Appellants"), and to the amended *Notice of Appeal and Statement of Election* [Docket No. 1952] (the "Kwok Joinder") filed by Kwok Mei Po, each in the United States District Court for the Southern District of New York (the "Court"). In support of this Response, the Debtors state the following:

**Preliminary Statement**[2]

1. After nearly a month of deliberation, on January 4, 2023, the Bankruptcy Court entered a forty-five page opinion addressing the hundreds of pages of letters, objections, briefing, and evidence presented to it in connection with the Debtors' request to sell stablecoins to help fund their chapter 11 cases. The relatively unobjectionable sale (a near 1:1 trade of cryptocurrencies "pegged" to the U.S. dollar for U.S. dollars) elicited such a strong response because (i) it implicated the ownership of these stablecoins as well as the ownership of all cryptocurrencies transferred into the Debtors' Earn Program and (ii) the consequences of the resolution of the ownership issue appear to have been widely misunderstood. In light of the responses to the Debtors' initial sale motion, the Bankruptcy Court

[2] Terms capitalized but not defined in the Preliminary Statement shall have the meanings ascribed to such terms elsewhere in this Response.

determined to have a separate hearing specifically to address the "Earn" ownership issue.

2.   Following the Bankruptcy Court's instruction, the Debtors consulted with certain represented parties regarding the "Earn" adjudication schedule and ultimately negotiated a schedule with the Official Committee of Unsecured Creditors (the "UCC") designed to ensure an appropriate balance between (i) the Debtors' near-term need for liquidity to fund their chapter 11 cases and (ii) concerns that the Debtors' proposed timeline (even on full notice) may not provide sufficient time to take discovery, brief, and evaluate certain fact-dependent defenses and/or counterclaims. The agreed solution was for the Debtors and the UCC to impose certain limitations on the relief requested by the Debtors.

3.   Accordingly, the Debtors and the UCC agreed on a two-phase approach. More specifically, the Debtors limited their requested phase-one findings to: "(a) determining the plain meaning of the Terms of Use with respect to the title of assets transferred into the Earn Program, (b) determining whether the elements of a contract were present for each version of the Terms of Use, (c) whether subsequent versions of the Terms of Use were binding on account holders who had accepted a prior version of the Terms of Use, and (d) whether the specific stablecoin sought to be sold is property of the Debtors' estates." *See Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II)*

*Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1325] ¶ 16.  Importantly, the Debtors expressly reserved all Account Holders' contract defenses and potential counterclaims for future (phase two) proceedings.  *See id.*  ("[T]his [motion] does not seek findings with respect to . . . whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use, and all parties' rights are reserved with respect to each of the foregoing.").

4. The Bankruptcy Court granted the Debtors' limited requests for relief, and the Earn Opinion:  (i) established a rebuttable presumption that the Debtors' Terms of Use were a valid, enforceable contract, (ii) authorized the Debtors to sell the stablecoins, and (iii) ***otherwise reserved*** issues regarding contract defenses and potential counterclaims.  Earn Opinion at 22, 30 ("But based on the unambiguous contract terms, *subject to any reserved defenses*, the Court finds and concludes that the cryptocurrency assets deposited in Earn Accounts are presumptively property of the estate and not property of the Account Holders.") (emphasis added); *id.* at 31 ("Based on the limited scope of findings sought by [the Debtors], the Court's decision does not determine . . . whether any individual Account Holder has valid defenses to the contract between Account Holders and the Debtors.").  In so holding, the Earn Opinion resolved phase one of the litigation, and expressly reserved phase two to resolve contract defenses.

5. Notwithstanding the explicit reservations that prevent the Earn Opinion from qualifying as a final order, the Appellants maintain, without legal support, that the Earn Opinion is a final order that does not require leave of the Court to appeal or, alternatively, that the Appellants should be granted leave to appeal. Because the Earn Opinion is not a final order—and because an interlocutory appeal would be value destructive to the Debtors' estates—the Debtors object to the Motion and request that the Appellants' request for leave to appeal be denied.

**Background**

6. On January 4, 2023, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Opinion"), holding that the Debtors' Terms of Use presumptively constitute a binding contract governing the relationship between the Debtors and their account holders (the "Account Holders"), and that according to the unambiguous language of the Terms of Use, the assets transferred into the Debtors' "Earn" program (the "Earn Program," each associated account, an "Earn Account," and such assets, including any proceeds thereof, the "Earn Assets") are property of the Debtors' estates. *See* Earn Opinion at 31–42. The Earn Opinion further authorized the Debtors to sell certain stablecoins (a specific type of cryptocurrency) associated with the Earn Program to generate liquidity to fund their chapter 11 cases

(the "Stablecoin Sale"). *See id*. at 44–45. The Earn Opinion emphasized that Account Holders' "rights with respect to various defense to and breach of contract claims[3] are reserved," and that "[c]reditors will have every opportunity to have a full hearing on the merits of these arguments during the claims resolution process." *Id.* at 45.

7. On January 6, 2023, the Bankruptcy Court entered an order denying an Earn Account holder's motion seeking a ruling that she has full title to and ownership of the funds in her blocked or suspended Earn Accounts. *See Order Denying Kwok Mei Po's Motion Seeking A Ruling of Full Ownership of Funds* [Docket No. 1833] (the "Kwok Order"). The Bankruptcy Court found that Kwok alleged a colorable breach of contract claim against the Debtors for freezing or suspending her Earn Account(s) prepetition, or for not returning her Earn Assets after the freezes/ suspensions, but held that Kwok's claim "would not affect the ownership of" the Earn Assets associated with Kwok's accounts, which "w[ere] and remain[] property of the estate." Kwok Order at 4 (citing the Earn Opinion).

---

[3] Such defenses and claims include fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable. Earn Opinion at 43; *see, e.g.*, Motion at 7 ("[A]ppellant Immanuel Herrmann alleges that his Earn contract was amended and superseded by other written agreements."); *id.* at 8 ("Appellant Daniel Frishberg alleges that his 'Earn' contract was materially breached/voided by the Debtors when they did not close his account as required by the contract."); *id.* at 8 ("Appellant Kulpreet Khanuja alleges that access to his account was intentionally blocked in Celsius 'HODL' mode, preventing withdrawal before petition date.").

8. On January 18, 2023, the Appellants filed the Notice of Appeal and the Motion seeking leave for appellate review of the Earn Opinion (this "Appeal"). The Motion requested that the Court either treat the Earn Opinion as a final order entitling appeal as of right, or treat the Motion as a motion for leave to appeal if the Earn Opinion is interlocutory. *See* Motion at 2.

9. On January 30, 2023, Kwok attempted to join the Appeal and to expand its scope to include the Kwok Order. *See* Kwok Joinder. In the Kwok Joinder, purportedly signed by all Appellants,[4] Kwok identified the Earn Opinion as the sole subject of the Appeal. *See* Kwok Joinder at 2. In Kwok's signature block, however, Kwok added the clause "[w]ith regard to the order related to, but not limited to [the Earn Opinion *and the Kwok Order*]." Kwok Joinder at 6. To the extent Kwok attempts to appeal the Kwok Order through the Kwok Joinder, she is a week late. *See* Bankruptcy Rule 8002(a)(1) ("Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."). Even if her appeal were timely, the reasoning of this Response applies equally to the Kwok Joinder. *See* Kwok Order at 4 (explaining that notwithstanding the Earn Opinion and the Kwok Order, Kwok

[4] From public postings on Twitter, it appears that Kwok did not have the Appellants' consent to sign their names to her joinder. *See* Daniel Frishberg (@DanielFCelsius), Twitter (Jan. 30, 2023, 12:56 PM), https://twitter.com/DanielFCelsius/status/1620133821755826179?s=20&t=iFR-Gibhq9Ve-9TwQcnUbw ("[T]his isn't how you do it. You don't join a notice of appeal. Proper way is to appeal it yourself, or file a [sic] amicus brief with the court. You sure as hell should ask the people who filed the appeal before you join and use their signatures… #CelsiusBankruptcy").

can assert her breach of contract claims against the Debtors by filing a proof of claim in the claims resolution process).

## Response

### I. The Appellants Must Obtain Leave of this Court to Appeal the Earn Opinion.

10. The Earn Opinion is not a final order within the meaning of 28 U.S.C. § 158 and, as such, the Appellants require leave of the Court to appeal. 28 U.S.C. § 158(a)(3) ("The district courts of the United States shall have jurisdiction to hear appeals . . . *with leave of the court*, from other interlocutory orders and decrees.") (emphasis added). *Cf. Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) ("[O]rders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case."); 28 U.S.C. § 158(a)(1) (providing that district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees"). The Appellants have taken the position—without citing any authority—that the Earn Opinion is a final order because it is "conclusive," "unequivocal," and "[t]he Bankruptcy Court and the Celsius Debtors both *appear*, from the record thus far, to be treating this as a final order, with respect to property rights claims for Earn account assets under 11 USC § 541." Motion at 9 (emphasis in original).

11. Under established Second Circuit law, an order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief" to be a final order. *In re Integrated Res., Inc.*, 3 F.3d 49, 53 (2d Cir.

1993).  Here, the Earn Opinion ***explicitly*** limits its findings, establishing only a rebuttable presumption that (1) each Account Holder is party to a binding contract with the Debtors and (2) the plain language of the contract unambiguously transferred ownership of the Earn Assets to the Debtors.  *See* Earn Opinion at 22, 30 ("But based on the unambiguous contract terms, *subject to any reserved defenses*, the Court finds and concludes that the cryptocurrency assets deposited in Earn Accounts are presumptively property of the estate and not property of the Account Holders.") (emphasis added); *id.* at 31 ("Based on the limited scope of findings sought by [the Debtors], the Court's decision does not determine . . . whether any individual Account Holder has valid defenses to the contract between Account Holders and the Debtors.").  These limitations were negotiated by the Debtors and the UCC with the intent of streamlining the resolution of future, related matters.  *See, e.g.*, *id*. at 43–44 ("[A] hypothetical determination that the Debtors breached the contract with an Account Holder or that [statements by the Debtors' founder and former CEO] fraudulently induced a creditor to open an account *requires a preliminary finding that there was a contract between Celsius and the Account Holders and a determination of each party's rights and obligations under this contract*.") (emphasis added).

12. To this point, the Earn Opinion repeatedly emphasizes that the reserved issues (*i.e.*, defenses and counterclaims) remain open for future determination.  *Id.*

at 43 ("[Account Holders' allegations such as fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and unconscionability] may (or may not) have merit, and the creditors' rights with respect to such claims are explicitly reserved for the claims resolution process."); *id.* at 45 ("As has been said repeatedly in this opinion, [Account Holders'] rights with respect to various defense to and breach of contract claims are reserved.  Creditors will have every opportunity to have a full hearing on the merits of these arguments during the claims resolution process.").  Because the Earn Opinion leaves open these contract defenses and counterclaims, it does not completely resolve the relief (if any) individual Account Holders are entitled to receive and is not a final order by the standards established in *Integrated Res*.  Accordingly, leave from this Court is required for the Appellants to appeal the Earn Opinion.

## II. The Appellants Have Not Met Their Burden, and the Court Should Not Grant Leave to Appeal the Earn Opinion.

13. The steep burden of establishing that an interlocutory appeal is warranted falls to the Appellants, and the Motion fails to meet this burden.  *See In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007) (describing the burden as falling on the appellant to show "exceptional circumstances").  For this reason, and because an interlocutory appeal is not appropriate under the circumstances, the Motion should be denied.

14. Interlocutory appeals of bankruptcy court orders are discretionary and disfavored. *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003) (holding that a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court under 28 U.S.C. § 158(a)(3)); *In re Liddle & Robinson, L.L.P.*, No. 20-civ-00865 (ER), 2020 WL 4194542, at *4 (S.D.N.Y. July 21, 2020) ("[I]nterlocutory appeals from bankruptcy courts' decisions are 'disfavored' in the Second Circuit." (quoting *In re Madoff*, No. 08 Civ. 01289 (SAS), 2010 WL 3260074, at *3 (S.D.N.Y. Aug. 6, 2010))). Interlocutory appeals are "not intended as a vehicle to provide early review of difficult rulings in hard cases." *United States v. Am. Soc'y of Composers, Authors & Publishers*, 333 F. Supp. 2d 215, 221 (S.D.N.Y. 2004). The party seeking an interlocutory appeal has the burden of showing "exceptional circumstances" to "overcome the general aversion to piecemeal litigation" and "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Perry*, 377 B.R. at 73 (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990)).

15. A district court may permit an appeal of an interlocutory order from the bankruptcy court if (1) "such order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination

of the litigation." *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007) (quoting 28 U.S.C. § 1292(b)). "[A]ll three requirements set forth in [28 U.S.C. § 1292(b)] must be met for a [c]ourt to grant leave to appeal." *In re Futter Lumber Corp.*, 473 B.R. 20, 26–27 (E.D.N.Y. 2012); *see Liddle*, 2020 WL 4194542 (denying leave to appeal when the movant failed to meet the third requirement). Even if the elements are met, district courts have "broad discretion" to deny an interlocutory appeal. *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06-cv-15375 (KMK), 2007 WL 1119753, at *1 (S.D.N.Y. Apr. 12, 2007).

16.    The Court should not grant leave for the Appeal because the Appellants have not met their burden of showing that an appeal is necessary or appropriate. This alone is sufficient to deny the Motion. An examination of the *Perry* factors provides further support for the Debtors' Response.

17.    ***First***, an immediate appeal from the Earn Opinion will not advance the ultimate termination of the litigation. An immediate appeal is considered to advance the ultimate termination of the litigation if that "appeal promises to advance the time for trial or to shorten the time required for trial." *Perry*, 377 B.R. 69, 74 (S.D.N.Y. 2007) (quoting *Transport Workers Union of Am., Local 100, AFL–CIO v. N.Y.C. Transit Auth.*, 358 F.Supp.2d 347, 350 (S.D.N.Y. 2005)). This factor primarily concerns judicial efficiency and "is considered the most important of the [28 U.S.C. § 1292(b)] factors." *Liddle*, 2020 WL 4194542 at *5. For example, the court in

*Liddle* denied a secured creditor leave to appeal the bankruptcy court's order authorizing payments because "it [was] not clear that the ultimate question of the appropriate fees would be determined any more quickly" by granting leave for the appeal: either "[the secured creditor] is incorrect about the law, in which case appellate review could only prolong the course of the proceedings below," or "[it] is correct on the law, in which case the issue will be returned to the Bankruptcy Court to decide whether the services were incurred for [its] benefit." *Id.* at *5.

18.     Here, as in *Liddle*, the ultimate question of Account Holders' treatment will not be determined any more quickly by granting leave for the Appeal. The Earn Opinion only establishes a presumption that the Terms of Use formed a binding contract between the Debtors and Account Holders that unambiguously transferred right and title to the Earn Assets to the Debtors' estates (which presumption remains subject to any reserved defenses and counterclaims to be resolved in subsequent proceedings before the Bankruptcy Court). Appellate review will only further delay the Debtors' chapter 11 process because (i) if the Appellants succeed, they will merely erase this heavily litigated baseline and put the Debtors and all parties back at square one and (ii) if the Appellants fail, the reserved defenses and counterclaims will still need to be litigated in the Bankruptcy Court—which is exactly the process now following the Earn Opinion. This is exactly why the burden to appeal an interlocutory order is so high—it would be extremely inefficient to appeal the Earn

Opinion now when further proceedings were expressly contemplated to resolve reserved defenses.

19. ***Second***, there is no substantial ground for difference of opinion with respect to the Earn Opinion. Substantial ground for difference of opinion exists where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Coudert Bros. LLP L. Firm Adversary Proc*., 447 B.R. 706, 712 (S.D.N.Y. 2011). The mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion. *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). And, "[m]erely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion." *In re Cross Media Mktg. Corp*., No. 03-cv-13901(BRL), 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007).

20. Here, while "property rights for cryptocurrency deposits" may be "an extremely new area of law," Motion at 15, the Earn Opinion is based on contract formation and interpretation, some of the most fundamental and well-established areas of law. Moreover, the Earn Opinion only interpreted one contract—the Terms of Use—and an appeal of the Earn Opinion will do nothing to resolve other cryptocurrency cases, each of which have their own customer contracts. The Earn Opinion, based heavily on Second Circuit precedent, held that the Terms of Use are

a valid, enforceable "clickwrap" contract. *See* Earn Opinion at 32 (citing *Meyer v. Uber Techs., Inc*., 868 F.3d 66 (2d Cir. 2017) and Restatement (Second) of Contracts to find that "New York Courts overwhelmingly accept 'clickwrap' agreements as sufficient to constitute mutual assent"). Similarly, the Bankruptcy Court relied on black letter law regarding contract interpretation in finding that the Terms of Use are unambiguous and thus extrinsic evidence is irrelevant to establishing their meaning. *See* Earn Opinion at 29, 38 (citing *Greenfield v. Philles Records*, 98 N.Y.2d 562, 570 (2002) for the principle that a contract is unambiguous if "on its face [it] is reasonably susceptible of only one meaning," and *In re Enron Corp*., 292 B.R. 752, 762 (Bankr. S.D.N.Y. 2003) and *W.W.W. Assoc. v Giancontieri*, 77 N.Y.2d 157, 162 (1990) for the principle that extrinsic evidence may be considered only if the agreement is ambiguous").

21. In contrast, the Appellants cited no authority that contradicts or even distinguishes the case law on which the Bankruptcy Court relied to reach the Earn Opinion, relying entirely on conclusory statements. *See, e.g.*, Motion at 7 ("The pro se Appellants dispute that the contract was, overall, clear and unambiguous as to ownership."); *id.* ("[I]t is widely disputed who agreed to the contract with respect to which specific deposits; whether the contract was modified and superseded by other contracts, oral, and written statements . . ."); *cf. In re Lehman Bros. Holdings Inc.*, No. 13-civ-02211 RJS, 2014 WL 3408574, at *2 (S.D.N.Y. June 30, 2014) (Even

"the existence of a small number of bankruptcy court opinions to the contrary—especially opinions based on reasoning that the [c]ourt has already determined is unpersuasive—does not create a 'substantial doubt' that the [c]ourt's opinion was correct."). As the court in *Cross Media* held, mere disagreement with the Bankruptcy Court's ruling does not warrant leave from the Court to appeal an interlocutory order. *See Cross Media*, 2007 WL 2743577, at *2 ("Merely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion.").

22. ***Third***, the Earn Opinion does not involve a controlling question of law. Under 28 U.S.C. § 1292(b), a question of law is controlling if reversal of the appealed order would terminate the action. *Perry*, 377 B.R. at 74 (*Klinghoffer*, 921 F.2d at 24). The question of law must "refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record," and "[q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under [28 U.S.C. § 1292(b)]." *Perry*, 377 B.R. at 74.

23. Here, the Appeal relates primarily to (i) issues regarding the application of the facts to applicable law and (ii) arguments regarding issues the Bankruptcy Court reserved for a later resolution. No dispositive, "pure" legal question is at issue—the Court would need to delve deep into the underlying facts—including the

Terms of Use themselves and the declarations and testimony of three witnesses—to determine if the Appellants should prevail. Further, if the Appellants prevail, fact-intensive issues that have already been partially decided by the Earn Opinion will need to be re-litigated (potentially on a case-by-case basis) in the Bankruptcy Court, along with the reserved defenses and counterclaims (and the purpose of allowing an interlocutory appeal to proceed is for the resolution of the appeal to *narrow* the remaining issues). *See In re Residential Cap., LLC*, No. 14-cv-09711 (RJS), 2015 WL 5729702, at *6 (S.D.N.Y. Sept. 30, 2015) ("While reversal of the Orders would, to be sure, expand the scope of the remaining dispute between Appellant and the Trust, that is not the type of 'significant' impact contemplated under [28 U.S.C. § 1292(b)], which is concerned with whether an interlocutory appeal would 'simplify'—not complicate—matters.").

24. The Appellants seek early review of the Bankruptcy Court's ruling, which conforms with controlling Second Circuit law for clickwrap contracts, to relitigate their position on the facts in the hopes of achieving a different outcome. The Appeal can only serve to drain estate assets and erode critical progress achieved after *months* of litigation, all before the Bankruptcy Court has an opportunity to fully resolve the matter. As such, an interlocutory appeal is not appropriate, and the Court should deny Appellants' Motion.

**Reservation of Rights**

25. In the event that the Court finds the Earn Opinion is a final order, or grant Appellants leave to appeal the Earn Opinion as an interlocutory order, the Debtors reserve all rights with respect to such appeal.

[*Remainder of page intentionally left blank*]

New York, New York
Dated: February 1, 2023

*/s/ Joshua A. Sussberg*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: jsussberg@kirkland.com

\- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
ross.kwasteniet@kirkland.com
chris.koenig@kirkland.com
dan.latona@kirkland.com

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g):

- ☒ this document contains [●] words, **or**
- ☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because:

- ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, **or**
- ☐ this brief has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

/s/ *Joshua A. Sussberg*
Signature

Date: February 1, 2023

Print name of person signing certificate of compliance:

Joshua A. Sussberg