February 16, 2023

Judge J. Paul Oetken
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

                Re: *In re Celsius Network LLC*, 1:23-cv-00523-JPO
                and related cases 1:23-cv-01243-JHR, 1:23-cv-01302-UA

Dear Judge Oetken:

We are writing to give you some updates on the Celsius case and our appeal, to request consolidation of three related Celsius appeals in Your Honor's courtroom, and to request direction from the Court about the next steps in our appeal, including whether the Court is able to issue an order allowing our appeal to move forward, or whether a reply or additional briefing in response to the Debtors' Opposition Brief (docketed as D.R. 2 in this case) will be needed.

Two related appeals have been filed, including another appeal of the original Earn order, and an appeal of a related lift-stay order that is appealable as a matter of right under *Ritzen Group, Inc. v Jackson Masonry, LLC*, 140 S. Ct. 582 (2020), which we believe moots the question of leave for appeal, notwithstanding the Debtors recent response in that case.

If more briefing on the question of whether the Earn order is an interlocutory v. final order is ultimately needed after reading this letter and reviewing the appeals before the Court will authorize the consolidated appeals to move forward, then we respectfully ask that the these appeals be consolidated and that the various appellants be able to file replies after our appeals are consolidated.

Since our initial appeal was filed, a few significant things have happened.

First, *pro se* appellant Kwok Mei Po, without coordinating with the original *pro se* appellants, attempted to join our appeal. This filing has been docketed as D.R. 4 in this case. We responded to this filing in page 2 of our Designation and Statement of Issues, and respectfully ask that the Court either treat this as its own Notice of Appeal and consolidate it with the other appeals, or else disregard it if improper.[1]

---

[1] See *Appellants' Statement of Issues to Be Presented and Designation of Items to Be Included in the Record of Appeal*, filed 2/1/23:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902022380000000126.pdf

Second, on February 1, *pro se* appellant Courtney Burkes Steadman filed a separate timely Notice of Appeal, which has been docketed as 23-cv-1302 in the SDNY District Court.[2] Ms. Burkes Steadman spoke with Mr. Herrmann and informed him that she consents to consolidating her appeal with the rest of the group, while reserving the right to separately brief her appeal. She also confirmed that she submitted her designation to the Clerk of the SDNY Bankruptcy Court on February 15.

Third, and most relevant to the question of leave for leave to appeal, also on February 1, *pro se* appellant Kulpreet Khanuja, who is a party to the original Earn appeal and the original appeal–and a signatory on this letter–filed his own notice of appeal for the denial of his lift stay Motion, the *Order Denying Kulpreet Khanuja's Motion Seeking a Ruling that Personal Earn Assets are Not Property of the Debtors' Estates* with the same questions on appeal, plus some additional questions.[3] This appeal has been docketed as Case #23-cv-1243 in the SDNY District Court; we ask that it, too, be consolidated with this appeal.

We believe that, upon consolidation with the order denying Mr. Khanuja's lift stay motion, the question of finality will likely be moot, notwithstanding the Debtor's response to Mr. Khanuja to the contrary. That is because, like other similar individual creditor motions in these cases, Mr. Khanuja's motion was treated as an informal lift stay motion by the Debtors and by the Bankruptcy Court.[4] The Bankruptcy Court's order denying Mr. Khanuja's Motion referenced the Earn order as the primary basis for its decision, making it inextricably related to this appeal. Mr. Khanuja consents to consolidating this appeal for the purposes of scheduling while reserving rights to separately brief his appeal.

The *Order Denying Kulpreet Khanuja's Motion* decides a motion to lift the automatic stay–and in doing so, references the Earn decision as a basis for denying him his requested relief.[5]

In *Ritzen,* the U.S. Supreme Court ruled that orders denying lift-stay motions, such as Mr. Khanuja's, are final, appealable orders. "We granted certiorari to resolve whether orders denying relief from bankruptcy's automatic stay are final, therefore immediately appealable under

---

[2] See *Notice of Appeal and Statement of Election,* filed 2/1/23:
https://cases.stretto.com/public/x191/11749/PLEADINGS/117490202238000000064.pdf

[3] See *Notice of Appeal and Statement of Election*, filed 2/1/23:
https://cases.stretto.com/public/x191/11749/PLEADINGS/117490202238000000069.pdf

[4] See, as an example: *Debtors Objection to Creditor's Notice of Motion and Motion Seeking For Ruling of Full Title of Ownership of Funds With Respect to Users Who Have Been Blocked Access By Debtor Prior to Bankruptcy and to Request Disclosure From Debtor On the Number and Amount of Suspended/Closed Accounts Which Funds Still Kept By Debtor* at 1: "Kwok seeks to lift the automatic stay"*:* https://cases.stretto.com/public/x191/11749/PLEADINGS/117491018228000000137.pdf Also, in these cases, the Debtors and the Court have required 21-day notice of Creditor motions such as Khanuja's, which is consistent with the local rules for motions to lift the automatic stay, whereas other motions require 14-day notice.

[5] See Kulpreet Khanuja's *Notice of Appeal and Statement of Election,* filed 2/1/23:
https://cases.stretto.com/public/x191/11749/PLEADINGS/117490202238000000069.pdf

§158(a)(1)," wrote the Supreme Court. The Supreme Court ultimately agreed with the Sixth Circuit and concluded "that the order denying Ritzen's motion to lift the stay was final under §158(a)."

As noted, Mr. Khanuja's motion is a lift-stay motion. In addition, the Bankruptcy Court's decision on Mr. Khanuja's motion shows that with respect to determining estate property interests under 11 USC §541(d), the Earn decision is a final order that determined ownership in Earn account assets resided with the Debtors.[6] The Khanuja decision corroborates our stance, stating that **"any claim** that Celsius breached its contract with Khanuja **would not affect the ownership** of cryptocurrency deposited in Khanuja's account." (Emphasis added.)

We continue to believe that the Earn decision itself is a final order, for the simple reason that it determined the issue of ownership in Earn account assets, subject only to defenses and counterclaims. It disposed of, with finality, property rights questions under 11 U.S.C. § 541(d), and authorized the sale of stablecoins under 11 U.S.C. § 363.

If this Court find that the Earn decision is *not* a final order, if we are made to wait for a "final final" order that decides conclusively the issue of title to all Earn account assets, it will be too late to grant meaningful relief, as a plan or sale of all of the Debtors' "assets" will be steamrolling toward confirmation and an appeal of a confirmation order may be equitably moot and may be prohibited by a requirement to post a bond beyond the capability of the *pro se* claimants.

Furthermore, as noted above, if this Court denies us the immediate right to an appeal, Mr. Khanuja is still entitled to an immediate appeal as a matter of right under *Ritzen,* notwithstanding Debtors' assertions to the contrary. Splitting this appeal, and Mr. Khanuja's appeal, into two separate appellate streams would lead to inefficiencies, waste judicial resources, and quite possibly deprive appellants of their due process rights (if our later appeal is delayed and becomes equitably moot, or requires us to post a bond.)

The circumstances are indeed exceptional here. Determining the property rights in cryptocurrency deposited in a bankrupt debtor is an issue of first impression. The Debtors have characterized this as a contract issue only, without looking at the nature of the property itself.

---

[6] See Kulpreet Khanuja's *Notice of Appeal and Statement of Election,* p. 6-7 filed 2/1/23, "Consistent with the Court's Earn Opinion and Order Denying Kwok Mei Po's Motion Seeking a Ruling of Full Ownership of Funds (ECF Doc. # 1833), *any* claim that Celsius breached its contract with Khanuja would not affect the ownership of cryptocurrency deposited in Khanuja's account. As the Earn Opinion explains, the cryptocurrency deposited in Earn Accounts became property of Celsius. If Khanuja believes he has compensable claims against Celsius (beyond the amount on deposit in his accounts) based on Celsius's failure to return funds upon his withdrawal demand, he can file a proof of claim and assert such claims in the claims-allowance process. But the cryptocurrency in Khanuja's Earn Accounts was and remains property of the estate. Accordingly, Khanuja's Motion is DENIED." (Emphasis added):
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902022380000000069.pdf

In addition to legal matters of first impression, appellants raise important due process issues. The process and schedule to present arguments was not subject to any signed scheduling order. In fact, two appellants objected to the proposed but unsigned scheduling order that we appeared to operate under at the hearing date approached. The Debtors filed their Exhibit and Witness list one day late (after the "hard deadline" for all filings in the case in the unsigned scheduling order).[7] The UCC decided to support the Debtors' position that Earn assets were property of the estate at the last minute. Several appellants had filed reservations of rights opposing the UCC representing our interests in this matter. Appellants had no meaningful opportunity to present their "case." Earn account customers were thereby railroaded and stripped of asset ownership without due process.

Furthermore, the Bankruptcy Court never explained–and it is unclear–what it means to say title to Earn account assets is *presumptively* in the estate. Whether this means that we now must prove our cases by "clear and convincing evidence," rather than "preponderance of the evidence," or something else, the meaning of this remains a mystery, but the results of the decision appear, from related orders, such as the Khanuja order, to cut off further arguments that cryptocurrency marked in the Debtors' schedules as "Earn" is not property of the Debtors estates.

The nature of what the appellants hold–property versus unsecured claims–determines whether we have seats in determining a plan and resolving these cases. The Debtors and the Unsecured Creditors Committee have now excluded Earn account holders from having any property rights claims, and we are effectively reduced to unsecured creditors with no claim to recover our coins themselves. Whereas other claimants, including Borrowers (those who took out loans) Withhold account customers (whose coins were 100% commingled with Earn customers), and Custody account customers (whose coins were partly commingled with Earn customers), get more of a seat at the negotiation table due to differences in property rights status.

Our issues go to contract formation. The Earn decision, as clarified in the Khanuja order, found that "any" breach of contract claim does not change ownership.

The Debtors claim in their brief that there is confusion among creditors about what property rights in this case means. Not so. All *pro se* appellants understand that there are not enough coins for every creditor to be made whole; the Custody and Loans groups are nearing settlements

---

[7] See proposed, but unsigned, *Order Setting a Briefing and Discovery Schedule Regarding Title to Earn Program Assets and the Sale of Certain Stablecoins,* **"Hard Deadline on All Filings (pro se included)"** was December 2, 2022. On January 3, 2023, the Debtors submitted a witness list and exhibit list while the clerk's office was closed, and *pro se* appellants had no way to get a witness list or exhibit list docketed before the hearing. We only were offered a verbal opportunity at the hearing to enter evidence. https://cases.stretto.com/public/x191/11749/PLEADINGS/1174911112280000000017.pdf

where they would receive only a percentage of their deposits back. The issue here is that the Debtors are designing a discriminatory process to promote other Account holders and demote us from owner to unsecured creditor, with a corresponding drop in priority that vastly jeopardizes our chance for any meaningful relief or recovery, including questions around whether our claims will be "dollarized" as of the petition date.

The nature of what the *pro se* appellants hold in these cases will dictate who is invited to the table in plan negotiations and who gets what. Perhaps because this case has hundreds of thousands of creditors, because Earn is the largest group of creditors, and because various parties do not want to deal with mediation or other negotiations with Earn customers, Debtors are trying to force a process with a predetermined result that all customers whose assets are marked as "Earn" assets by the Debtors are unsecured, in violation of our due process rights.

Contrary to the Debtor-appellee's assertions, appellate intervention now is appropriate and necessary and will facilitate resolution below by bringing all affected parties to the negotiation table and will promote consensus building, not needless litigation.

We respectfully ask that the Court:
1. Rule that these are final orders and authorize the appeal to move forward (or, in the alternative, issue an order granting us leave to appeal).
2. Consolidate the appeals mentioned in this letter pursuant to FRBP 8003(b)(2) as the Court finds proper, under our original appeal in Your Honor's courtroom. The case numbers for the other two cases are: 23-cv-1302 and 23-cv-1243.
3. Resolve the Kwok filing one way or the other (we are fine with the Court treating it as a separate notice of appeal under the principle that *pro se* filings should be liberally construed, or else disregard as improper.)
4. If the court needs more briefing on the question of whether this issue is interlocutory vs final, we respectfully ask that let us know when you need a response, and what issues you would like briefed.

Once these appeals are consolidated, as we said, the we believe that the Khanuja lift-stay appeal likely moots the question of leave for appeal under *Ritzen*.

In any case, consolidation will help with judicial economy and answering these questions, including, if necessary, the interlocutory vs final question.  On February 15, the Debtors filed a Motion to Strike in the Bankruptcy court;[8] we expect similar motions to be filed with respect to the other appellants, and it will be much more efficient if the appeals are consolidated.

---

[8] See Debtors' Motion Seeking Entry of an Order (I) Striking Certain Items from Appellants' Designation of Record on Appeal, and (II) Granting Related Relief: https://cases.stretto.com/public/x191/11749/PLEADINGS/117490216238000000028.pdf

All this said, if the Court still needs more briefing on the question of whether this issue is interlocutory vs final and/or whether consolidation is warranted after considering the Khanuja appeal and our consolidation request, please let us know when you need a response, and what issues you would like briefed.

Thank you, Your Honor.

<u>*s/ Immanuel Herrmann*</u>
Immanuel Herrmann
*Pro Se*
February 16, 2023

<u>*s/ Daniel A. Frishberg*</u>
Daniel A Frishberg
*Pro Se*
February 16, 2023

<u>*s/ Georges Georgiou*</u>
Georges Georgiou
*Pro Se*
February 16, 2023

<u>*s/ Kulpreet Khanuja*</u>
Kulpreet Khanuja
*Pro Se*
February 16, 2023

<u>*s/ Christopher J. Little*</u>
Christopher J. Little
*Pro Se*
February 16, 2023

<u>*s/ Luke P Nowak*</u>
Luke P Nowak
*Pro Se*
February 16, 2023