Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | )<br>) | Bankruptcy Appeal |
| CELSIUS NETWORK LLC, | )<br>)<br>) | Case No. 1:23-cv-00523-JPO |
| Debtor-Appellee. | )<br>)<br>) | |

## DEBTOR-APPELLEES' RESPONSE
## TO APPELLANTS' FEBRUARY 17, 2023 LETTER

In response to the February 28, 2023 docket-entry order [Docket No. 9] of the

United States District Court for the Southern District of New York (the "Court"),

directing the above-captioned Debtor-Appellees (collectively, the "Debtors")[1] to

---

[1]  The Debtors in the jointly administered chapter 11 cases of *In re Celsius Network LLC, et al.*, No. 22-10964 (MG) (the "Bankruptcy Docket"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

respond to the February 17, 2023 letter [Docket No. 7] (the "Letter") filed by the Appellants,[2] the Debtors state the following:

## Response

1.      The Debtors agree that the Khanuja Appeal should be consolidated with the above-captioned appeal (this "Appeal") to promote judicial economy and conserve estate resources.  The Debtors further agree that the Khanuja Order is closely related to the Earn Opinion.  The remainder of the Letter, however, grossly misrepresents the proceedings before the Bankruptcy Court in an attempt to establish a basis for an appeal as of right where none exists:  to be clear, neither the Debtors nor the Bankruptcy Court treated the Amended Khanuja Motion as a motion for relief from the automatic stay.

2.      The Appellants' Letter follows the Debtors' filing of the *Debtors' Response in Opposition to Appellants' Motion for Leave* [Docket No. 3] (the "Motion for Leave Response") and the *Debtors' Response to Kulpreet Khanuja's Notice of Appeal* (the "Khanuja Appeal Response").[3]  The Debtors' Motion for Leave Response and the Khanuja Appeal Response both detail why the underlying

---

[2]     "Appellants" refers to Daniel A. Frishberg, Georges Georgiou, Immanuel J. Herrmann, Kulpreet Khanuja, Christopher J. Little, and Luke P. Nowak.  For the avoidance of doubt, references to Appellants do *not* include Courtney Burkes Steadman, notwithstanding the reassignment of Ms. Steadman's appeal (*In re Celsius Network LLC*, 1:23-cv-01243-JHR (S.D.N.Y. Feb. 14, 2023)) to this Court as related to this Appeal.

[3]     *In re Celsius Network LLC*, 1:23-cv-01243-JHR [ECF No. 3] (S.D.N.Y. Feb. 14, 2023) (and such appeal, the "Khanuja Appeal").  Capitalized terms used by not defined in this response shall have the meaning ascribed to them in the Khanuja Appeal Response.  The Khanuja Appeal Response is attached hereto as **Exhibit A**.

appeals are not appeals of final orders (because the orders expressly contemplated additional proceedings on reserved issues) and argue that leave to appeal is not appropriate under the circumstances.

3.      Rather than responding on the merits of the Motion for Leave Response and the Khanuja Appeal Response, the Appellants opted instead to misrepresent to the Court that the Debtors and the Bankruptcy Court treated the Amended Khanuja Motion as a stay-relief motion.  Because neither the Earn Opinion nor the Khanuja Order concerns relief from the automatic stay, the arguments set forth in the Motion for Leave Response and Khanuja Appeal Response remain reflective of the Debtors' position:  neither the Earn Opinion nor the Khanuja Order is a final order for the purpose of 28 U.S.C. § 158(a)(1).  Because the Appellants have not demonstrated why leave should be granted to appeal either order, the Court should deny leave to appeal both the Khanuja Order and the Earn Opinion.

4.      Throughout their chapter 11 cases, the Debtors have worked overtime to interpret *pro se* pleadings generously and to respond to them as if they clearly articulate a proper basis for relief, even when the filing creditor has not cited to any case law or statutory authority supporting their requested relief.[4]  Where the Debtors

---

[4]      *See, e.g., Debtors' Objection to Immanuel Herrmann's Motion for the Entry of an Order (I) Appointing A Chapter Eleven Mediator (II) Directing Mandatory Mediation and (III) Granting Related Relief* [Bankruptcy Docket No. 1738] ¶¶ 6–11 (citing cases and the mediation protocol adopted by the Bankruptcy Court to explain why the "mandatory mediation" requested by Mr. Herrmann was not mandatory or appropriate); *see also Daniel A. Frishberg's Motion for Reconsideration of Gk8 Sale and Other Requested Relief* [Bankruptcy Docket No. 1794] ("As I am a Pro Se filer, and I do not understand the law as well as a lawyer would, I ask that you do as The Supreme Court Of The United States said: 'a *pro se* complaint, however inartful pleaded, must be held to less

believe that a *pro se* creditor has cited to an inapplicable statute, case, or rule, the Debtors have endeavored to respond with an explanation of why they believe that basis is inapplicable and have generally also sought to explain the proper standard and respond to that as well.[5]   In certain circumstances, the Debtors have affirmatively sought relief to ensure an equitable result where *pro se* creditors have brought issues to their attention.[6]

5.      In the Letter, the Appellants cite to a single occasion where the Debtors responded to a motion by a *pro se* filer (who is not one of the Appellants) as if it were a lift-stay motion despite the fact that the motion itself did not mention a request to lift the stay.[7]  The Appellants extrapolate from this, without explanation, that the

---

stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (*quoting Conley v. Gibson*, 355 U.S. 41, 45 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007), and *Rabin v. U.S. Dep't of State, C.I.A.*, 980 F. Supp. 116, 121 (E.D.N.Y. 1997)).  *The latter quote is, in fact, miscited, and instead comes from *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

[5]      *See, e.g.*, *Debtors' Objection to Proof of Claim No. 24480 of Daniel A. Frishberg* [Bankruptcy Docket No. 2107], Exhibit B (detailing the pleading standards and elements of each of the twenty-seven claims Mr. Frishberg asserted in his proof of claim, many of which were inadequately pled or entirely without factual support); *Notice of Hearing on Debtors' Objection to Proof of Claim No. 24604 of Immanuel Herrmann* [Bankruptcy Docket No. 2105], Exhibit B (doing the same for the seventeen claims Mr. Herrmann asserted in his proof of claims); *Debtors' Omnibus Objection to (I) Nicole Barstow's Motion to Consider USDC Investors as Secured Creditors, (II) Lucas Holcomb's Motion to Consider Stablecoin Creditors as Secured Creditors, and (III) Douglas Saker's Motion to Consider Tethergold (XAUT) Creditors as Secured Creditors* [Bankruptcy Docket No. 1188] ¶¶ 2–4 (explaining to the creditor-movants that the alleged "collateralization" of digital assets by physical assets is unrelated to the classification of a claim as a secured claim under the Bankruptcy Code).

[6]      *See, e.g.*, *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Return Postpetition Cryptocurrency Transfers to Account Holders and (II) Granting Related Relief* [Bankruptcy Docket No. 1817] ¶ 2 ("Account holders have recently began requesting the return of their Postpetition Transfers [of cryptocurrency to the Debtors' platform].  Because the Debtors generally agree that such Postpetition Transfers should be returned to account holders, the Debtors file this Motion to obtain authority to do so regardless of whether a transferor has specifically requested a return of their Postpetition Transfer to ensure a uniform approach and a streamlined process.").

[7]      *See Creditor's Notice of Motion and Motion Seeking for Ruling of Full Title of Ownership of Funds with Respect to Users Who Have Been Blocked Access by Debtor Prior to Bankruptcy and to Request Disclosure from Debtor*

Debtors took the same approach with respect to the Amended Khanuja Motion.[8]  The Debtors' response to a separate *pro se* creditor's motion has zero bearing on the Amended Khanuja Motion, and despite the Appellants' suggestion, those arguments are not implicitly adopted into subsequent proceedings regarding completely separate motions.[9]

6.      From early in these chapter 11 cases, the Debtors have prioritized the collective resolution of the question of ownership of the cryptocurrency on their platform to avoid an onslaught of expensive, time-consuming, and piecemeal litigation.  The procedural history of those efforts is detailed in the Motion for Leave Response.[10]   In short, the Debtors and the Official Committee of Unsecured Creditors negotiated (and the Bankruptcy Court adopted) a two-stage approach to expeditiously resolve the Earn ownership issue, with stage one concerning the baseline issues of contract formation and interpretation and with all individualized

---

*on the Number and Amount of Suspended/ Closed Accounts Which Funds Still Kept by Debtor* [Bankruptcy Docket No. 877] (the "Kwok Motion") (requesting a determination of ownership of cryptocurrency assets); (objecting to the motion with arguments regarding stay relief).

[8]    *See* Letter at 2 ("[L]ike other similar individual creditor motions in these cases, Mr. Khanuja's motion was treated as an informal lift stay motion by the Debtors and by the Bankruptcy Court.").

[9]    While the motion in the precedent dispute the Appellants cite did not explicitly reference the stay, the Debtors' arguments in response did so extensively.  *See generally Debtors' Objection to Creditor's Notice of Motion and Motion Seeking For Ruling of Full Title of Ownership of Funds with Respect to Users Who Have Been Blocked Access by Debtor Prior to Bankruptcy and to Request Disclosure from Debtor on the Number and Amount of Suspended/Closed Accounts Which Funds Still Kept by Debtor* [Bankruptcy Docket No. 1106] (the "Stay Objection").  In contrast, the Debtors did not make any arguments regarding the automatic stay in connection with the Amended Khanuja Motion.

[10]   *See also* Khanuja Appeal Response.

arguments reserved for stage two.[11]  Each of the Appellants (including Mr. Khanuja) participated in the stage-one Earn ownership proceedings.

7.      Notwithstanding his knowledge of and participation in this collective process, Mr. Khanuja also pursued an individualized, parallel process "[i]n response to the Debtor's Statement that 'the status of the "Earn" assets is a gating issue that must be resolved,'" and to "request a hearing to ensure that [his] digital assets (Earn program deposits) are deemed [his] property (property of creditor/customer) . . . ."[12] Neither the Khanuja Motion nor the Amended Khanuja Motion includes any references to (or discussion of) the automatic stay or related authority; the Debtors did not raise arguments regarding the automatic stay in their objection to the Amended Khanuja Motion; and neither the Debtors nor Mr. Khanuja mentioned the automatic stay during the hearing on the Amended Khanuja Motion.[13]

---

[11]   *See* Earn Opinion at 43 ("These allegations [of fraudulent inducement into contract, fraudulent conveyance, breach of contract, and unconscionability raised by creditors] may (or may not) have merit, and the creditors' rights with respect to such claims are explicitly reserved for the claims resolution process.  But importantly, as a prerequisite to those claims, the Court first must establish that a contract was formed and must interpret the contract terms.").

[12]   Khanuja Motion at 1.  The Khanuja Motion is attached hereto as **Exhibit B**.  Mr. Khanuja later filed the Amended Khanuja Motion "to supplement and replace" his first motion, renewing the same request for "a hearing to ensure that [his] digital assets (Earn program deposits) are deemed [his] property (property of creditor/customer) . . . ." Amended Khanuja Motion at 1.  The Amended Khanuja Motion is attached hereto as **Exhibit C**.

[13]   *Cf.* Stay Objection; *compare* Jan. 24 Hr'g Tr. 96:5–101:11 (Mr. Khanuja presenting, and the Debtors responding to, the Amended Khanuja Motion without any reference to the automatic stay) *with* Nov. 1 Hr'g. Tr. 102:22–24 ("Your Honor, we took this motion as a motion for relief from the stay, as well as for a declaratory judgment on the ownership of the assets.").

8.      In the Khanuja Order, the Bankruptcy Court extensively referenced the Earn Opinion, finding that many arguments raised by Mr. Khanuja are broadly applicable to "many, if not all, Earn Account Holders," and that "all but one" of them were already addressed in detail by the Earn Opinion.[14]   As to Mr. Khanuja's remaining argument, that "his individual circumstances create a colorable claim for a breach of contract action," the Bankruptcy Court found that those matters were reserved for the claims process.[15]   As a result—and consistent with the two-phase approach it adopted in the Earn Opinion—the Bankruptcy Court denied the Amended Khanuja Motion (again, without reference to the automatic stay).  On this record, the Appellants' characterization of the Amended Khanuja Motion as a lift-stay motion is blatantly inaccurate, even liberally construed.[16]

9.      As noted above, the Debtors agree that the Court should consolidate the Khanuja Appeal with this Appeal.  The Khanuja Order extensively referenced the Earn Opinion; five of the seven issues Mr. Khanuja raises on appeal overlap with the issues raised in this Appeal; and 250 of the 252 items Mr. Khanuja seeks to

---

[14]   Khanuja Order at 2–3.  The Khanuja Order is attached hereto as **Exhibit D**.

[15]   *Id*. at 3–4 (directing Mr. Khanuja to "file a proof of claim and assert [any] claims [he believed he had beyond a claim associated with his account balance] in the claims-allowance process").

[16]   *See Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) ("Where, however, a [*pro se*] petition fails even vaguely to suggest an essential element of a claim for relief, the district court is not required to overlook the deficiency.").  Further, at least one of these Appellants *has* filed a stay-relief motion, suggesting that the Appellants are aware of the difference. *See, e.g., [Daniel A. Frishberg's] Motion for Relief for a [sic] Exemption From the Automatic Stay* [Bankruptcy Docket No. 342] (requesting for relief from the automatic stay, utilizing the proper terminology).

designate to the record on appeal in the Khanuja Appeal are the same as those designated by the Appellants to the record for this Appeal.[17] To date, the Debtors have been filing substantially similar pleadings on multiple dockets, and the Debtors believe a consolidation of the pending appeals is in the best interests of their estates and would promote judicial economy. The Debtors strongly dispute, however, that "Mr. Khanuja's motion was treated as an informal lift stay motion by the Debtors and by the Bankruptcy Court"[18] and that consolidating the Khanuja Appeal with this Appeal would somehow "moot" the issue of whether the Earn Opinion is interlocutory.[19]

---

[17] *Compare* the Appellants' *Statement of Issues to Be Presented and Designation of Items to Be Included in the Record of Appeal* [Bankruptcy Docket No. 1976] (designating 250 items to the record for this Appeal and raising five questions on appeal) *with* Mr. Khanuja's *Statement of Issues to Be Presented and Designation of Items to Be Included in the Record of Appeal* [Bankruptcy Docket No. 2063] (designating two additional items to the record for the Khanuja Appeal and raising two additional questions).

[18] The Appellants cite only to the amount of notice given for the Amended Khanuja Motion and to the Kwok Motion/proceedings in making this assertion. For the reasons stated above, the Kwok Motion proceedings are completely inapposite. With respect to the Appellants' assertions that "the Debtors and the Court have required 21-day notice of Creditor motions such as Khanuja's, which is consistent with the local rules for motions to lift the automatic stay, whereas other motions require 14-day notice," the Appellants are, again, pointing to correlative facts as conclusive and making baseless assumptions. Letter at 2 n.4. Mr. Khanuja filed the Amended Khanuja Motion on January 2, 2023, more than fourteen days before the next-scheduled omnibus hearing on January 24, 2023. Therefore, pursuant to the case management procedures, the Amended Khanuja Motion was scheduled for the January 24 omnibus hearing. *See Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Bankruptcy Docket No. 1181] ¶ 18 ("[I]n the event that a party files and serves a Request for Relief at least 14 days before the next Omnibus Hearing, the matter shall be set for hearing at such Omnibus Hearing."); *id.* ¶ 19 ("Before filing a Request for Relief, a pro se party must reach out to chambers at mg.chambers@nysb.uscourts.gov to obtain a hearing date. Any pro se Requests for Relief that are filed without first obtaining a hearing date will not be scheduled for hearing on the Court's calendar."). The mere fact that the Khanuja Amended Motion was heard more than twenty-one days after it was filed does not mean that any party or the Bankruptcy Court viewed it as a lift-stay motion.

[19] *See*, *e.g.*, Letter at 2 ("We believe that, upon consolidation with the order denying Mr. Khanuja's lift stay motion, the question of finality will likely be moot."); *id* at 5 ("Once these appeals are consolidated, as we said, [] we believe that the Khanuja lift-stay appeal likely moots the question of leave for appeal under *Ritzen*.").

10.     For the reasons stated above, the Debtors respectfully request that the Court (i) consolidate the Khanuja Appeal with this Appeal, (ii) docket the Khanuja Appeal Response in this Appeal, (iii) find that both the Earn Opinion and the Khanuja Order are interlocutory orders, and (iv) deny leave to appeal.


[*Remainder of page intentionally left blank*]

New York, New York
Dated: March 3, 2023

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Official Form 417C (12/18)

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g):

☑ this document contains 3086 words, **or**

☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.  This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because:

☑ this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, **or**

☐ this brief has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

_____/s/ *Joshua A. Sussberg*_____        Date: _March 3, 2023_____
Signature

Print name of person signing certificate of compliance:

___Joshua A. Sussberg_____