Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Bankruptcy Appeal |
| CELSIUS NETWORK LLC, | ) Case No. 1:23-cv-01243-JHR |
| Debtor-Appellee. | ) |

**DEBTORS' RESPONSE TO**
**KULPREET KHANUJA'S NOTICE OF APPEAL**

Pursuant to rule 8004(d) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the above-captioned appellees/debtors and debtors in possession (collectively, the "<u>Debtors</u>")[1] file this response (this "<u>Response</u>") to Mr.

---

[1] The Debtors in the jointly administered chapter 11 cases of *In re Celsius Network LLC, et al.*, No. 22-10964 (MG) (the "<u>Bankruptcy Docket</u>"), along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Kulpreet Khanuja's *Notice of Appeal and Statement of Election* [Docket No. 1] (the "Notice of Appeal"). In support of this Response, the Debtors state the following:

## Background[2]

1. The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

2. On July 13, 2022, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Bankruptcy Docket No. 22]. The Debtors are operating their business and managing their property as debtors

---

[2] A detailed description of the facts and circumstances leading to the Khanuja Order is set forth in the Earn Opinion (defined below), a copy of which is attached hereto as Exhibit A.

in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

3. On September 15, 2022, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief* [Bankruptcy Docket No. 832] (the "Original Motion"), seeking authority to sell certain stablecoins in their possession in the ordinary course to fund operating expenses, including the costs of administering these chapter 11 cases. The Debtors received a number of responses to the Original Motion, most of which raised concerns regarding the status of the title of the stablecoins the Debtors proposed to sell.

4. On October 21, 2022, the Bankruptcy Court entered the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Related Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Bankruptcy Docket No. 1152] (the "Final Cash Management Order"). Pursuant to paragraph 5 of the Final Cash Management Order, the Debtors cannot liquidate or convert any cryptocurrency into cash absent an order of the Bankruptcy Court.

5. On November 11, 2022, the Debtors filed the *Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Bankruptcy Docket No. 1325], seeking the following findings: (a) determining ownership rights to assets transferred by account holders designated to be part of the "Earn" program (the "Earn Program"), based on the unambiguous plain language of each version of the Terms of Use (if more than one version is applicable); (b) whether each applicable version of the Terms of Use forms a binding contract with users who transferred assets to the Debtors while such Terms of Use were in effect (i.e., whether the elements of a contract are present); (c) whether subsequent amendments to the Terms of Use are binding on users who transferred their assets to the Debtors prior to the effectiveness of the subsequently amended Terms of Use (*e.g.*, whether a user who deposited coins in July 2020 is bound by the April 2022 Terms of Use); and (d) whether the specific stablecoin sought to be sold is property of the Debtors' estates (if not covered by the previous three issues). The Debtors emphasized that they did not seek findings with respect to whether any account holder has valid defenses to the purported contract between account holders and the Debtors under the Terms of Use, and all parties' rights are reserved with respect to each of the foregoing.

6. On November 14, 2022, Mr. Khanuja filed the *Verified Motion Seeking to Preserve My Right for Determination That My Personal Earn Program Assets Receive the Same Standing as Custody Accounts and Are Not Property of These Estates and Request for Hearing* [Bankruptcy Docket No. 1346] (the "Khanuja Motion"), requesting a ruling from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") that the digital assets he transferred into the Debtors' Earn Program (Mr. Khanuja's account in the Earn Program, an "Earn Account," and such assets, including any proceeds thereof, the "Earn Assets") were his property, and not property of the Debtors' estates. *See* Khanuja Motion at 1 ("I serve this motion and request a hearing to ensure that my digital assets (Earn Program deposits) are deemed my property (property of creditor/customer) . . . .").

7. On January 2, 2023, Mr. Khanuja filed the *Amended Verified Motion Seeking to Preserve My Right for Determination That My Personal Earn Program Assets Receive the Same Standing as Custody Accounts and Are Not Property of These Estates and Request for Hearing* [Bankruptcy Docket No. 1816] (the "Amended Khanuja Motion"), renewing his requests.

8. On January 4, 2023, the Bankruptcy Court entered the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Opinion"), holding that the Debtors' Terms of Use presumptively

5

constitute a binding contract governing the relationship between the Debtors and their account holders, and that according to the unambiguous language of the Terms of Use, Earn Assets are property of the Debtors' estates. *See* Earn Opinion at 31–42. The Earn Opinion emphasized that account holders' "rights with respect to various defense to and breach of contract claims[3] are reserved," and that "[c]reditors will have every opportunity to have a full hearing on the merits of these arguments during the claims resolution process." *Id.* at 45.

9. On January 17, 2023, the Debtors filed the *Debtors' Omnibus Objection to Certain Motions Set for the January 24, 2023 Omnibus Hearing* [Docket No. 1872] (the "<u>Khanuja Objection</u>"), arguing that the Earn Opinion ruled that the Earn Assets Mr. Khanuja deposited are property of the Debtors' estates and that any contract defense claims are reserved for the claims resolution process. On January 22, 2023, Mr. Khanuja filed the *Reply in Support of Kulpreet Khanuja's (Claimant) Motion To Preserve My Right for Determination that My Personal Earn Program Assets Receive the Same Standing as Custody Accounts and Are Not Property of These Estates and Request for Hearing* [Bankruptcy Docket No. 1909] (the "<u>Khanuja Reply</u>"), arguing that the adjudication of certain contract defense claims should not be delayed. On January 24, 2023, the Bankruptcy Court heard arguments

---

[3] Such defenses and claims include fraudulent inducement into the contract, fraudulent conveyance, breach of contract, and that the contract was unconscionable. Earn Opinion at 43.

6

regarding the Amended Khanuja Motion, the Khanuja Objection, and the Khanuja Reply.

10. On January 25, 2023, the Bankruptcy Court entered an order denying the Amended Khanuja Motion. *See Order Denying Kulpreet Khanuja's Motion Seeking A Ruling That Personal Earn Assets Are Not Property of the Debtors' Estates* [Bankruptcy Docket No. 1934] (the "Khanuja Order"). The Bankruptcy Court found that the Earn Opinion addressed in detail "all but one of Khanuja's arguments" and that they are broadly applicable to "many, if not all, Earn Account Holders." Khanuja Order at 2–3. The Bankruptcy Court found that Mr. Khanuja's remaining argument—that "his individual circumstances create a colorable claim for a breach of contract action against the Debtors because he attempted to and should have been able to withdraw his [Earn Assets]" before Celsius froze all withdrawals by account holders—"would not affect the ownership of cryptocurrency deposited in Khanuja's account," and that if Mr. Khanuja believe[d] "he ha[d] compensable claims against Celsius (beyond the amount on deposit in his accounts)" based on such a claim, "he c[ould] file a proof of claim and assert such claims in the claims-allowance process." *Id.* at 3–4.

11. On January 18, 2023, Mr. Khanuja, along with several pro se creditors, filed a *Notice of Appeal and Statement of Election* and the *Motion to Authorize Certain Procedural Relief, And, If Needed, for Leave to Appeal* [Bankruptcy Docket

7

No. 1894] seeking leave from the United States District Court for the Southern District of New York (the "Court") to appeal the Earn Opinion (the "Earn Appeal").[4] On February 10, 2023, the Debtors filed the *Debtors' Response in Opposition to Appellants' Motion for Leave to Appeal* [Earn Appeal Docket No. 3], requesting that the Court deny the appellants' request for leave to appeal on the basis that the Earn Opinion is interlocutory and an interlocutory appeal would be value destructive.

12. On February 1, 2023, Mr. Khanuja filed a separate *Notice of Appeal and Statement of Election* [Bankruptcy Docket No. 1974] to appeal the Khanuja Order (this "Appeal") that is "separate from but related to" the Earn Appeal. Notice of Appeal at 1. Mr. Khanuja did not file a motion for leave to appeal.

13. On February 8, 2023, Mr. Khanuja filed a proof of claim with the Bankruptcy Court [Claim No. 24101] that reasserts the contract defense claims Mr. Khanuja previously alleged in the Amended Khanuja Motion.

## Response

**I. Mr. Khanuja Must Obtain Leave of this Court to Appeal the Khanuja Order.**

14. The Khanuja Order is not a final order within the meaning of 28 U.S.C. § 158 and, as such, Mr. Khanuja requires leave of the Court fort this Appeal. 28 U.S.C. § 158(a)(3) ("The district courts of the United States shall have jurisdiction

---

[4] *In re Celsius Network LLC*, No. 1:23-cv-00523-JPO (S.D.N.Y. Jan. 20, 2023) (the "Earn Appeal Docket").

8

to hear appeals . . . *with leave of the court*, from other interlocutory orders and decrees.") (emphasis added). *Cf. Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) ("[O]rders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case."); 28 U.S.C. § 158(a)(1) (providing that district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees").

15. Under established Second Circuit law, an order "must **completely** resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief" to be a final order. *In re Integrated Res., Inc.*, 3 F.3d 49, 53 (2d Cir. 1993) (emphasis added). The Khanuja Order primarily relies on the Earn Opinion (which is already subject to a separate appeal in front of a different judge)[5] and explicitly does not resolve the merits of the one argument it separately addresses, instead deferring resolution of that matter to the claims reconciliation process. *See* Khanuja Order at 4 (directing Mr. Khanuja to "file a proof of claim and assert such claims in the claims-allowance process" if he wished to pursue damages for breach of contract).

16. Because the Khanuja Order does not reach the merits of Mr. Khanuja's breach of contract claim against Celsius, it does not completely resolve the relief (if

---

[5] The pending Earn Appeal—which the Debtors oppose as interlocutory and value destructive—is pending in front of Judge J. Paul Oetken. If the Court does not deny leave to appeal outright, the Debtors intend to request that the cases be consolidated.

9

any) Mr. Khanuja is entitled to receive and is not a final order by the standards established in *Integrated Res*. Accordingly, leave from this Court is required for Mr. Khanuja to appeal the Khanuja Order.

**II.     Mr. Khanuja Has Not Requested Leave for Appeal, and the Court Should Not Grant Leave to Appeal the Khanuja Order.**

17.     Mr. Khanuja—who is party to the pending Earn Appeal in which the appellants filed a motion for leave to appeal—failed to do so in the present Appeal. It is Mr. Khanuja's burden to establish that an interlocutory appeal is warranted, and in failing to file a motion for leave, Mr. Khanuja has not even attempted to meet his burden. *See* Fed. R. Bankr. P. 8004(a)(2) ("To appeal from an interlocutory order . . . of a bankruptcy court under 28 U.S.C. § 158(a)(3) . . . [t]he notice [of appeal] must . . . be accompanied by a motion for leave to appeal"); *see In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007) (describing the burden as falling on the appellant to show "exceptional circumstances"). Accordingly, leave to appeal the Khanuja Order should be denied or, at minimum, the Debtors respectfully request that the Court order Mr. Khanuja to file such a motion pursuant to Bankruptcy Rule 8004(b). Fed. R. Bankr. P. 8004(d).

<h2 style="text-align:center"><u>Reservation of Rights</u></h2>

18.     In the event that the Court finds that the Khanuja Order is a final order, or grants leave for Mr. Khanuja to appeal the Khanuja Order as an interlocutory order, the Debtors reserve all rights with respect to such Appeal.

| | |
|---|---|
| New York, New York<br>Dated: February 15, 2023 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email: jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Email: patrick.nash@kirkland.com<br>ross.kwasteniet@kirkland.com<br>chris.koenig@kirkland.com<br>dan.latona@kirkland.com<br><br>*Counsel to the Initial Debtors and Debtors in Possession*<br><br>*Proposed Counsel to the GK8 Debtors and Debtors in Possession* |

Case 1:23-cv-00524-HJR Document 13-1 Filed 02/15/23 Page 11 of 12

Official Form 417C (12/18)

# Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

    1. This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g):

- ■ this document contains 2570 words, **or**

- ❑ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

    2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because:

- ■ this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, **or**

- ❑ this brief has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

/s/ *Joshua A. Sussberg*  
Signature

Date: February 15, 2023

Print name of person signing certificate of compliance:

Joshua A. Sussberg