Judge J. Paul Oetken
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

***LETTER FROM THE CELSIUS APPELLANTS REGARDING DEBTOR-APPELLEES' RESPONSE TO APPELLANTS' FEBRUARY 17, 2023 LETTER (D.R. 10) AND STATEMENT OF APPELLANT KULPREET KHANUJA***

Dear Judge Oetken:

We are writing to correct the record on some of the Debtors' statements in their recent reply (1:23-cv-00523-JPO D.R. 10), to provide additional updates in the case and issues that have have arisen, and to provide a statement from appellant Kulpreet Khanuja with regards to his motion.

The appellants ask that:
1. This Court grant the mutually-agreed-upon consolidation of the three appeals, pursuant to FRBP 8003(b)(2), FRCP 42(a), and SDNY Local Rule 13(b)(2).
2. This Court issue an order that the consolidated appeals can move forward as a matter of right or, in the alternative, grant leave to appeal.
3. If the Court is not yet ready to rule on finality or grant leave to appeal, that the Court expeditiously schedule a hearing on the threshold question of finality, or in the alternative, leave to appeal.[1]

---

[1] To avoid a conflict in between the appeal and the Celsius bankruptcy case, see the Bankruptcy Court calendar at: https://cases.stretto.com/celsius/case-date-list/

1

## THE DEBTORS FILED MOTIONS TO STRIKE WHICH MAY RAISE JURISDICTIONAL ISSUES

The Debtors have filed three Motions to Strike in the Bankruptcy Court and the Appellants have now filed an initial response and will shortly file a supplemental response.[2]

**However, there a potential question with respect to these Motions: jurisdiction.** Given the District Court's actions already in these cases, including consolidating the Burks Steadman Appeal with this one, and ordering the Debtors to reply in this appeal regarding additional consolidation and other questions around whether the order is final or interlocutory, does the Bankruptcy Court still have jurisdiction to hear these Motions?

We will also raise the jurisdiction question with Chief Judge Glenn; in the mean time, we are working with the Debtors and Bankruptcy Court to narrow the disputes around the record on appeal, but may ultimately need to file a Motion to Expand or Supplement the record in this case, should we not be able to resolve all of our issues in the Bankruptcy Court, or should a jurisdictional issue arise.

## IF THE DEBTORS TREATED THE KHANUJA MOTION AS SOMETHING OTHER THAN A LIFT-STAY, AS THEY NOW CLAIM, THEY HAVE NOT EXPLAINED WHY

The Debtors fail to articulate in their reply any specific meaningful difference between Kwok Motion (which they concede they interpreted as a lift-stay in their replies) and the Khanuja motion (which they purportedly did not). Both motions asked for a ruling that coins were not property of the estate, but were instead the

---

[2] The Motions to Strike are here:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902162380000000028.pdf
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902232380000000033.pdf
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902232380000000041.pdf
The Appellants' initial response is here, and we plan to file a supplemental response that raises the question of jurisdiction on March 7:
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903022380000000116.pdf

property of the movant[3]. 11 USC § 362(b) defines a lift stay motion as "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The Khanuja motion clearly qualifies as a lift-stay under 11 USC § 362(b), if the Kwok motion did.

The Kwok motion was the first *pro se* creditor motion that was not a formal lift stay motion, but asked for a ruling that coins were not property of the Debtors' Estates. When the Debtors treated the Kwok motion as a lift stay, they set a precedent in the case for other similarly-situated creditor motions, and made future creditors believe that such motions would be treated as lift stay motions.

The Debtors' statement that "at least one of these Appellants *has* filed a stay-relief motion, suggesting that the Appellants are aware of the difference" is incorrect. Just because Mr. Frishberg was aware of the difference to some degree does not mean all other appellants were aware at the time they filed their separate, individual motions. Also, we are all learning as these cases go on, and know far more now than we did earlier. Each *pro se* creditor represents only themselves (and we each sign these filings only for ourselves), coordination and information-sharing before the appeal was limited, and we were led to believe that we could not submit joint *pro se* filings until quite recently in the case.

Mr. Frishberg filed a lift-stay motion asking to lift the stay to pursue his case in an outside court. Other motions asked for a property interest in coins. Even if appellants *were* aware of the difference, the precedent of the Kowk motion being treated as a lift-stay and as motion for declaratory judgment, and the Bankruptcy Court essentially welcoming similar motions to be filed informally, set the stage for motions which creditors would presumptively be treated the same way–i.e. consistently, and with equal chance at a fair hearing. If similar motions are not treated the same way, and there is no reason articulated for the difference in treatment and it's inequitable from a due process perspective and yet another reason why this Court should take this appeal, even if leave to appeal is required.

---

[3] The Khaunja motion asked that his coins be ruled "**NOT PROPERTY OF THESE ESTATES**" in its title, whereas the Kwok motion asked for "**FULL TITLE OF OWNERSHIP OF FUNDS**" in its title. This seems to be a distinction without a difference.

In *Ritzen,* the Supreme Court notes that "an appeal of right lies from 'final judgments, orders, and decrees' entered by bankruptcy courts 'in cases **and proceedings**.' Ibid. By providing for appeals from final decisions in bankruptcy 'proceedings,' as distinguished from bankruptcy 'cases,' Congress made 'orders in bankruptcy cases . . . immediately appeal[able] if they finally dispose of **discrete disputes** within the larger [bankruptcy] case.' *Bullard*, 575 U. S., at 501 (quoting *Howard Delivery Service, Inc. v. Zurich American Ins.* Co., 547 U. S. 651, 657, n. 3 (2006)); see *In re Saco Local Development Corp.*, 711 F. 2d, at 444–447. In short, "the usual judicial unit for analyzing finality in ordinary civil litigation is the case, [but] in bankruptcy[,] it is [often] the proceeding." Brief for United States as Amicus Curiae 10." (Emphasis added.) Additionally, an order that "alters the status quo and fixes the rights and obligations of the parties" is a final order.

Here, the Khanuja order states that **"the assets in Khanuja's accounts <u>are property of Celsius's bankruptcy estates</u>."** (Emphasis added.) Such a statement "alter[s] the status quo and fixes the rights and obligations of the parties" as described in *Ritzen.* Khanuja did not file his Motion seeking leave to file a bankruptcy claim; he filed his Motion seeking *ownership* of his coins. Under the order, Mr. Khanuja no longer has the right to claim a property interest in his coins, and the Debtors no longer have an obligation to hold his coins in trust, in case the Court rules that the coins are his property but can now sell them. As a result of the Khanuja order, Khanuja is now an *unsecured* creditor, and his coins are property of the bankruptcy estates under 11 USC § 541.

Mr. Khanuja's claim for ownership was disallowed with finality, ending the discrete dispute over ownership. The parts of the Khanuja order that say he can file a claim are more informational, rather than substantively changing the finality of the order: The order notes that Mr. Khanuja can file a claim as an unsecured creditor and seek damages. However, it also notes that the coins are the property of Celsius. That ruling that Kulpreet does not own his coins is final, and immediately appealable; any subsequent claim or claim objection is an entirely different proceeding.

While the Khanuja order states that Mr. Khanuja can make a claim for breach of contract and other claims, in the claims resolution process, such a statement does

not make the order any less final; it also states that "any claim that Celsius breached its contract with Khanuja **would not affect the ownership** of cryptocurrency deposited in Khanuja's account" and that "As the Earn Opinion explains, **the cryptocurrency deposited in Earn Accounts became property of Celsius.**" (Emphasis added.)

Given that the Khanuja motion was filed with the express purpose of getting an order from the court declaring that his deposits were **not property of the Debtors' estates**[4], it is puzzling how an order definitely declaring Mr. Khanuja's coins **property of Celsius** is not final. The mere statement by the court in the ruling that Khanuja has the right to file a claim, as an unsecured creditor of Celsius, and seek damages related to an unsecured claim (as a creditor), does not make the ruling any less final, change the fact that the ruling stated three times that Celsius owns Mr. Khanuja's coins.

If this Court does not find that the Khanuja motion was treated as a lift-stay or otherwise a final order that resolves a discreet dispute after reviewing the Debtors' response, from a due process perspective, such a motion, asking for a declaratory judgment on ownership of property, should have been treated as lift-stay (or else, Khanuja should have been directed to file an Adversary Proceeding or otherwise given the statutory protections under Rule 7001 for "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" and a "proceeding to obtain a declaratory judgment relating to any of the foregoing.")

Mr. Khanuja has provided his own additional statement at the end of this letter.

---

[4] The title of the Khanuja motion was "AMENDED VERIFIED MOTION SEEKING TO PRESERVE MY RIGHT FOR DETERMINATION THAT MY PERSONAL EARN PROGRAM ASSETS RECEIVE THE SAME STANDING AS CUSTODY ACCOUNTS AND **ARE NOT PROPERTY OF THESE ESTATES** AND REQUEST FOR HEARING" (Emphasis added)
https://cases.stretto.com/public/x191/11749/PLEADINGS/117490125238000000039.pdf

## THE DEBTORS RECENT CLAIM FORM OBJECTIONS, AND AN ATTEMPT TO END AN ADVERSARY PROCEEDING BASED ON THE EARN DECISION AS "LAW OF THE CASE," SHOW THE INTENT, VS THE CLAIMS, BEHIND THE EARN ORDER

Since we last wrote the court, the Debtors have filed 3 claim objections as test cases: the claims of appellants[5] Daniel A. Frishberg and Immanuel Hermann, and the claim of Rebecca Gallagher, a retiree who has, essentially, her entire life savings in Celsius and can never make that money back in her lifetime and has been active in the case.[6]

In the claims objections, the Debtors state that they will be objecting to **all** claims for "fraud, breach of contract, constructive trust, **or other damages** against the Debtors' estates." (Emphasis added.) Their objections are no surprise. Yet, their objections fly in the face of the Debtors claims going into the Earn hearing.

In their reply in support of their Amended Stablecoin Motion, the Debtors claimed both individual and defenses would be reserved. They also stated in a footnote that "at least one Objector argues that certain defenses are generally applicable and that the Debtors were not seeking to 'force customers to file alternative claims, one at a time, to challenge their schedules. . . . [M]ost of these defenses apply to large groups of customers, they are not just corner cases that apply to a single individual.' See Supplemental Herrmann Objection at 13. This is not the Debtors' intention. To **the extent that a fact-specific defense is established to be generally applicable, the presumption could be widely rebutted.** As the same Objection notes, "some cornercase defenses will be unique." Id at 14. **The Debtors' intent is to preserve such individuals' arguments."** (Emphasis added.)[7]

---

[5] Which is quite convenient, since all three of the test cases have been quite active *pro se* creditors, and none of the test cases are represented by counsel, and that two of the three test cases are appellants, it seems like the Debtors are attempting to not only once again bypass statutory protections, but overload the appellants with work by forcing them to fight multiple different issues at once.
[6] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902202380000000004.pdf
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902202380000000005.pdf
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902202380000000006.pdf
[7] See: https://cases.stretto.com/public/x191/11749/PLEADINGS/1174912022280000000145.pdf

6

Yet, their responses on the docket with respect to claims, and the adversary proceeding they are attempting to dismiss, fly in the face of these prior statements.

The Memorandum Opinion[8] on Earn asset ownership that is the subject of this appeal stated that "Creditors' Rights with Respect to Defenses to Contract Formation and Breach of Contract Claims are Reserved for the Claims Resolution Process." However, just as the Amended Stablecoin Motion hearing (that resulted in this appeal) was not a meaningful opportunity for property rights issues for Earn customers to be adjudicated, except in a summary way, the claims resolution process does not *appear* to be meaningful either, at least, not the way the Debtors are interpreting the Earn order thus far.[9] The Debtors now intend to attempt to "zero out" all Earn customer claims via that process *in bulk*.

A recent filing by the the Debtors in the Bankruptcy Court show that the Debtors themselves take the position that the Earn order ended, with **finality**, the ownership rights of all Earn customers and additionally ended the right of an Celsius Earn creditor to file an Adversary Proceeding with the full protections of the Federal Rules of Civil Procedure in these cases. Instead, they claim that, under the Earn order, the "law of the case" requires that such claims be reserved for the claims resolution process, where they are now unsecured "claims" for damages.[10] Then, within that process, they are seeking to summarily dismiss everything, without the appropriate statutory protections.

So, essentially, Debtors are now arguing that a ruling, which the appellants contend **should have been decided in adversary proceeding to begin with–under rule 7001 with the protections of the FRCP and FRBP–**ends the right to have *any* of our claims to ownership, even ones that Rule 7001 **requires** be brought as an

---

[8] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174901042380000000067.pdf
[9] Chief Judge Glenn has not yet ruled on a claim. However, it is clear that the claims are not being heard as full contested matters with all of the protections that were implied by the Debtors when they put forward their Amended Stablecoin Motion.
[10] The Debtors filed a motion to dismiss the amended adversary complaint of Fred M. Shanks, likely as a test case for an Adversary Proceeding dismissals in general. In the filing, they argue that "The Law of the Case Bars Plaintiff from Litigating His Breach-of-Contract Claim in this Adversary Proceeding." See: https://cases.stretto.com/public/x191/11749/PLEADINGS/1174902222380000000168.pdf p. 13

adversary proceeding, within adversary proceeding.[11] Yet, they also claim it is not a final order.

Thank you, Your Honor.

*/s/ Kulpreet Khanuja*
Kulpreet Khanuja
March 06, 2023

*/s/ Immanuel Herrmann*
Immanuel Herrmann
March 6, 2023

*/s/ Luke Nowak*
Luke Nowak
March 06 2023

*s/ Christopher J. Little*
Christopher J. Little
March 6, 2023

*/s/ Georges Georgiou*
Georges Georgiou
March 1, 2023

*s/ Daniel A. Frishberg*
Daniel A. Frishberg
March 6, 2023

---

[11] According to the *Memorandum Opinion and Order* itself, footnote 23: "Issues **required** to be brought as an adversary proceeding under Fed. R. Bankr. P. 7001 include a "(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002; (2) a proceeding to determine the validity, priority, or extent of a lien **or other interest** in property, but not a proceeding under Rule 3012 or Rule 4003(d); (3) a proceeding to obtain approval under §363(h) for the sale of both the interest of the estate and of a coowner in property; (4) a proceeding to object to or revoke a discharge, other than an objection to discharge under §§727(a)(8),1 (a)(9), or 1328(f); (5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan; (6) a proceeding to determine the dischargeability of a debt; (7) a proceeding to obtain an injunction or **other equitable relief**, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief; and (8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination; (9) **a proceeding to obtain a declaratory judgment relating to any of the foregoing;** or (10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452." Rule 7001(10), requiring an adversary proceeding to determine a claim or cause of action removed under 28 U.S.C. §1452, is not relevant here." (Emphasis added.)

## **KULPREET KHANUJA'S STATEMENT**

Your Honor,

On 03/03/2023, the Debtors filed a response Case 1:23-cv-00523-JPO Document 10 agreeing that the Khanuja Appeal should be consolidated with the above-captioned appeal. The Debtors further agreed that the Khanuja Order is closely related to the Earn Opinion. However, the Debtors also contend that the proceedings before the Bankruptcy Court have been misrepresented in an attempt to establish a basis for an appeal. Below, I intend to counter the Debtors' contention and also provide arguments to the contrary.

Your Honor, I am a *Pro Se* claimant. And my understanding and usage of the legal terms, vocabulary and the court processes is certainly not as proficient as that of the Debtors' Counsel or the Bankruptcy Court. But the courts, including the Second Circuit courts and the Supreme Court, provide *Pro Se* filers, like myself, an assurance our filings be construed liberally. See *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 475 (2d Cir. 2006) (citing *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("This policy of liberally construing pro se submissions is driven by the understanding that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.").

I will appreciate if Your Honor grants the appellant this consideration if any legal terms have been omitted or used incorrectly and rather the focus is on the key arguments presented for your consideration. Below, I will attempt to share some arguments in response to the debtors' position of dismissing my appeal in plain language to avoid any misinterpretation.

Throughout this case, the Debtors have taken contradictory positions to support their positions. The Debtors in their response Case 1:23-cv-00523-JPO Document 10, argue that our appeals are not appeals of final orders and hence we must seek leave to appeal. But if the Orders are not Final, it would imply that key issues pertaining to our motions, including the ownership of Earn account assets and

9

equitable treatment with those of Custody account assets are still pending decisions, and that the Debtors must get these ownership resolved before proceeding with the Reorg or Sale plan. But that is not the case. The Debtors are proceeding with the sale of assets and describing the ownership issue as resolved in the Bankruptcy Court. That is detrimental to this Appellant and to hundreds of thousands of other Earn account holders. These sales are causing us irreparable harm and make timely acceptance of this appeal critical. The debtors argue that the court orders expressly contemplated additional proceedings on reserved issues. The additional proceedings are moot if the Chapter 11 Plan, or a 363 Sale, including that of the Appellant's assets, is already conducted prior to these proceedings. Conversely, if the ownership question for assets *is* conclusively resolved by the Earn decision, and/or for me, given the judge's order in my case stating that Celsius owns my coins, then it is hard to imagine how the decision issued in response to my motion it isn't a final order, or at the very least, one that is important enough to justify immediate appeal, with billions of dollars of assets on the line.

The Debtors say that the Appellants are incorrectly treating the Amended Khanuja Motion as a stay-relief motion but neither the Earn Opinion nor the Khanuja Order is a final order for the purpose of 28 U.S.C. § 158(a)(1). Hence the Court should deny leave to appeal both the Khanuja Order and the Earn Opinion. But again, if these orders were not final–then there would still be gating issues to resolve around ownership of coins–i.e. unresolved Earn Asset ownership determination and the Debtors would need to get this issue resolved *prior* to any plans around a 363 sale or a Reorg of the assets. That, unfortunately, is not the case. Nor have I been granted a hearing date to continue discussions on my motion seeking ownership of my funds. Rather, the issue of ownership was summarily dismissed after a very short hearing.

Note that in this Appellant's case, that is the amended Khanuja motion hearing, the Appellant was provided 2-3 minutes where the Appellant simply made a statement requesting an opportunity to present evidence and arguments rather than make the arguments themselves. But such an opportunity was not granted. Neither was the Appellant allowed to respond to the Debtors' objection in the hearing, despite raising my hand. And the following day the motion, my motion was denied in the

filing (Khanuja Order at 0303 Exhibit D) without ever getting an opportunity to present his arguments or object to the Debtors' statements. Note that the Order denying my motion did not address many issues including the tax treatment that proved my ownership of the assets. These claims cannot be reserved for later proceedings or through the claims process, and they are not reserved. They are contract formation issues and property rights, ownership, and property of the estate issues. For Earn customers like me, from reading the order Judge Glenn issued to me, it is clear that those issues will not be resolved in the claims process, nor can they be.

The Debtors claim misrepresentation in Appellants' filing–but it is in fact the Debtors who are misrepresenting the background and court proceedings to the court. The Debtors in their response Case 1:23-cv-00523-JPO Document 10, mention that the Debtors have prioritized the collective resolution of the question of ownership of the cryptocurrency on their platform. They mention that the Debtors and the Official Committee of Unsecured Creditors negotiated (and the Bankruptcy Court adopted) a two-stage approach to expeditiously resolve the Earn ownership issue, with stage one concerning the baseline issues of contract formation and interpretation and with individualized arguments reserved for stage 2.

But there are certain omissions in the above statements and misrepresentations of the Appellants' participation in these proceedings. First of all, the contract formation issues are still not addressed in Stage 1, or if they are "addressed" they've been summarily dismissed. In my motion, I argued the contracts were unconscionable and provided supporting case law and even evidence to support these assertions. But these issues were either not addressed or have been postponed for Claims process by the bankruptcy court, and are treated as "breach of contract" claims rather than contract formation issues. These issues are not only individualized arguments but many affect thousands of creditors. Yet these have been set aside to arrive at an expeditious but biased decision. The Debtors mention that each of the Appellants (including Mr. Khanuja) participated in the stage-one Earn ownership proceedings. That is true, but the Appellants, including this appellant, were not allowed to speak for broader Earn account holders. In fact, in hearings, *Pro Se* claimants were prohibited from and admonished for speaking on

behalf of all Earn account holders. While we submitted objections, in the hearings we were not allowed to provide detailed arguments or present evidence or quote from the deposition testimonies. The Bankruptcy Court had granted us the hearing dates for our individual motions, which were initially supposed to take place *before* the Earn hearing, but they were adjourned and the Earn decision was ultimately rendered before our hearings were conducted, despite direct correlation between the Earn decision and our hearings. In fact, many of our arguments were not heard but rather directly dismissed quoting the Earn decision.

The Debtors in their response Case 1:23-cv-00523-JPO Document 10, mention that the in the Khanuja Order, the Bankruptcy Court extensively referenced the Earn Opinion, finding that many arguments raised by Mr. Khanuja are broadly applicable to "many, if not all, Earn Account Holders." This further proves that our arguments that affected many Earn account holders must have been heard prior to the Earn decision and we must have been granted an opportunity to present evidence to prove ownership of Earn assets. Secondly, whether an argument affects one or thousands, should not be the basis of dismissing an argument. But the Bankruptcy Court, on the one hand, clearly prohibited us as *Pro Se* to argue on behalf of many account holders. Now, the Debtors are trying to dismiss the arguments by saying they affect many creditors. This is another example of a contradictory position by the Debtors.

In summary, *Pro Se* creditors were not allowed to speak for broader Earn account holders. In fact we were explicitly prohibited, sometimes even admonished, by the Bankruptcy Court, saying we can only present these arguments for ourselves. Now when we present these arguments in our individual motions and appeals, the Debtors argue that these issues affect many creditors, and this is a collective process, so will be unfair to other account holders.

Your Honor, the issues in our Appeal are important to be addressed in this Earn appeal, as opposed to the claims process, or after there is a plan headed towards confirmation. Firstly, the Reorg plan submitted to the bankruptcy court by the debtors offers substantially different treatment to the account holders who are deemed to be the owners of the assets as opposed to the ones deemed unsecured

creditors, such as the *ad hoc* group of Custody holders. Yet Earn account holders, like the Claimant, are not being provided an opportunity to prove asset ownership.

The Debtors argue they are working towards collective benefit and equitable treatment but different groups of creditors (such as Custody and Borrowers) are not being treated equally vs Earn, which is part why the Appellants sought to include the Borrowers' Adversary Proceeding in the record on appeal (as background). Notably, all that we have to go on to define who an "Earn" customer is, is the Debtors' own schedules filed with the bankruptcy court. If one group of account holders is getting substantially higher returns than a different group with a significantly larger portion of creditors, how is that fair and equitable?

The Debtors claim there were differing Terms of Use for certain account holders versus others, but the Terms of Use is not the only determination of ownership as there is factual evidence such as the tax documents that provide proof of ownership. Further, the Terms of Use themselves are ambiguous and contracts unconscionable as can be proved through the debtors' sworn testimonies, factual evidence like tax filings, and the full terms of use, including the loans terms of use which some other Appellants argue modified and superseded some users' contracts (and which we were not able to enter into evidence in the Earn hearing but were cited in responses to the Amended Stablecoin Motion.) Yet all these have been put aside by the court for later despite the debtors' claims that the Stage 1 of the bankruptcy addressed the contract formation and above mentioned issues.

Further, the debtors say that all individualized arguments are reserved for stage 2, and have stopped talking about group defenses to the contract, which they said they would seek to protect in their response to the Amended Stablecoin order. This implies that the arguments affecting many will be totally dismissed in stage 2. In fact this is already happening as some of the appellants' claims and the Khanuja motion's arguments are being dismissed on the same grounds. So in summary, the Appellants were prohibited from making arguments that certain defenses affected broad swaths of Account holders in Stage 1–and now, in spite of the Debtor pledging to preserve individual and group defenses in Stage 2 in their initial response to the Amended Stablecoin Motion, these arguments are being dismissed on grounds that they are not individualized. The debtors are, on the one hand,

claiming the claims process is to adjudicate breach of contract type issues that are specific to each appellant in spite of their past statements to the contrary. But, on the other hand, they are trying to dismiss those claims too, saying that meaningfully reviewing those claims will diminish the asset pool for other creditors and are too difficult and expensive to litigate.

The court appointed examiner's report is also a perfect example of contradictory positions taken by the debtors to support their agenda. On one hand, the debtors are arguing the report is hearsay due to debtors' employees not speaking under oath. On the other hand, the debtors are seeking an approval from bankruptcy court to set aside funds from the debtors' estate for the cooperating witnesses' legal fees based on the findings in a report which they claim is "hearsay." Note that the examiner reported the delays and lack of cooperation from the debtors which resulted in delays with the report. Another item they seek to strike from the record on appeal. Also, the examiner reported that the lack of cooperation meant certain interviews had to be conducted not under oath.

Your Honor, in conclusion I would like to reiterate that the debtors have many times taken contractionary positions throughout these cases, so while their response about why the Kwok motion was treated as a lift-stay, but mine was not, is disappointing, but not surprising. The account holder groups with legal representation received a seat on the table and are still able to negotiate a better outcome for themselves. While Earn account holders and *Pro Se* creditors, like this Claimant, have been treated like a nuisance, especially when we tried to assert our rights during the process around the Earn hearing. Most, if not all, issues in this bankruptcy, can be attributed to the Debtors claiming ownership of the customer's assets with unconscionable and subtle contract changes and click-wrap acceptance. Certain appellants argue that they even placed assets into Earn in explicit violation of the contracts. Yet, none of this evidence around ownership is not being taken into account. The Debtors are responsible for the hearing schedule and postponing the Pro Se hearings multiple times to long after the Earn decision and bypassing the evidence gathering and related processes. Further, the Debtors pushed the courts towards an expedited but biased decision which is being appealed now. These issues must be addressed.

As debtors in possession, it must have been imperative on the Debtors and their counsel to provide all documents and evidence to the parties including the bankruptcy courts and the creditor body reasonably requested, make it available to us to enter into the record, and let the court decide whether particular evidence is admissible or not. On the contrary, the debtors in possession have been refusing to share documents and evidence such as debtors' own tax docs, which clearly demonstrate the ownership of assets.

Your Honor, I request you to consolidate my appeal with this appeal, and grant this appeal so the issues can be addressed with proper federal processes, to ensure Pro Se rights are not dismissed, and to ensure that Earn customers, the largest creditor group in these cases, gets a fair chance.

*/s/ Kulpreet Khanuja*
Kulpreet Khanuja
March 06, 2023